```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

                Petitioner,

        v.                            16 CIV. 5997 (RMB)

CF 43 HOTEL, LLC, et al.,

                Respondents.          Conference
------------------------------x
                                      New York, N.Y.
                                      July 18, 2018
                                      9:55 a.m.
Before:

                HON. RICHARD M. BERMAN,

                                      District Judge


                        APPEARANCES

PITTA & GIBLIN LLP
     Attorneys for Petitioner
BY:  BARRY N. SALTZMAN
     ANDREW MIDGEN


CLIFTON BUDD & DEMARIA, LLP
     Attorneys for Respondents
BY:  ARTHUR J. ROBB

ALSO PRESENT:

Rich Maroko
Lilly Sirkin
```

2
H71nnyhc

```
 1              THE COURT:  If you could just bring me up to date on
 2    where things stand.  I take it from the correspondence that you
 3    have reached agreement as to how these monies are going to be
 4    paid.  That is the amount that I indicated in the decision and
 5    order resolving your motion, is that correct?
 6              MR. SALTZMAN:  Who would you like to address the
 7    question?
 8              THE COURT:  How about you.
 9              MR. SALTZMAN:  Thank you, your Honor.  I'm Barry
10    Saltzman, for the union.
11              Yes, the amount in your order and continuing interest
12    that has accrued as of, I believe, July 14.  There's interest
13    accruing every day.
14              THE COURT:  Has it been paid yet to anybody, or it's
15    being held for payment subject to this distribution scheme?
16              MR. SALTZMAN:  The amount of attorney's fees has been
17    paid.  We got the check yesterday.
18              THE COURT:  How did that happen?
19              MR. SALTZMAN:  It was delivered by hand.
20              THE COURT:  No.  I don't remember authorizing that.
21              MR. SALTZMAN:  There were attorney's fees in the
22    order.
23              THE COURT:  I don't remember authorizing distribution
24    of attorney's fees before employees get paid, and I never do
25    that.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   MR. SALTZMAN:  I understand.  It is being held in our
2   office.
3   THE COURT:  Just understand that.
4   MR. SALTZMAN:  We will not --
5   THE COURT:  So that money is not going to be
6   distributed?
7   MR. SALTZMAN:  No, it will not.
8   THE COURT:  OK.
9   MR. SALTZMAN:  There are also contributions to the
10  benefit funds, the employee benefit funds, amounting to about
11  $200,000.  We got those checks yesterday, and I just delivered
12  them to Mr. Maroko, who is general counsel and vice president
13  for the union and will bring it over to the funds.  Should we
14  ask the funds not to --
15  THE COURT:  Hold on.
16  Just let me hear the rest of the story.
17  MR. SALTZMAN:  Surely.  The employee payments have not
18  been made.
19  THE COURT:  What is the total amount of the employee
20  payments?
21  MR. SALTZMAN:  It's about $730,000 in actual wages
22  plus interest as of I think July 14.
23  THE COURT:  OK.  So that's the vast bulk of the moneys
24  that are being paid?
25  MR. SALTZMAN:  It is.

1     THE COURT:  OK.  What is the plan with respect to that
2  payout?
3     MR. SALTZMAN:  As I understand it, and I'm acting on
4  the representations made to me by Mr. Robb, the employer does
5  not have W-4s for these employees and would have trouble
6  cutting checks to the employees with appropriate withholdings.
7     THE COURT:  Let's just take one at a time.  Why would
8  there be no W-2s or W-4s whatever you call them.
9     MR. SALTZMAN:  I would leave that to Mr. Robb to
10 explain.
11    MR. ROBB:  If you would like to hear it now, your
12 Honor, the timeline of this is the affected employees were
13 payrolled by the management company that operated the hotel for
14 the seller.  A number of the employees were laid off by the
15 seller in the course of business, and then the balance of those
16 employees were laid off at the time of the closing.
17    So, for WARN Act purposes, the arbitrator and the
18 Court has determined the WARN Act obligations are ours.  The
19 reality is they never actually worked for us.  We never
20 actually ran a payroll with them as our employees.
21    THE COURT:  Do they account for all of these funds?
22 Everybody was laid off?
23    MR. ROBB:  Correct.
24    THE COURT:  So all the money that is remaining goes to
25 the categories of employees that you are now describing?

5
H71nnyhc

1          MR. ROBB:  Correct the.  The only monies for which

2     checks have not been delivered are the checks payable to the

3     workers.

4          THE COURT:  Right.

5          MR. ROBB:  The defendants reached out to the

6     management company, reached out to the payroll company, and the

7     answer was explicitly no, we are not going to reboot the system

8     for you to run a single payroll.  So the defendants cut --

9          THE COURT:  It doesn't sound like a very complicated

10    process.

11         MR. ROBB:  I don't know what's involved.  I guess

12    there is a cost involved in rebooting the system.

13         THE COURT:  The rebooting would be able to make the

14    deductions that are --

15         MR. ROBB:  Right.  ADP is the payroll company, and

16    they just told us they won't do it.

17         So the defendants cut 1099 checks without

18    withholdings, and leave it to the workers to pay their own

19    taxes.  The union told us they would prefer not to receive 1099

20    checks, but rather to utilize this mechanism that we described

21    in the letter.  That is fine with us.

22         MR. SALTZMAN:  To continue the narrative, your Honor.

23         THE COURT:  Yes.

24         MR. SALTZMAN:  We have had experience with 1099

25    checks.  It creates enormous headaches for working class people

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   who then have to respond to IRS inquiries.

2   THE COURT: I get that.

3   MR. SALTZMAN: Mr. Robb reached out to my office on
4   Thursday, last Thursday, in response to my e-mail giving him a
5   breakdown of all the amounts due by individual employee, and he
6   explained the problem he just explained to the Court.

7   THE COURT: He gave you the gross amounts without the
8   deductions?

9   MR. SALTZMAN: We gave him the spreadsheet with the
10  gross amounts, and I believe also we broke down the
11  withholdings.

12  THE COURT: You did?

13  MR. SALTZMAN: Yes.

14  THE COURT: So that information is available?

15  MR. ROBB: Just to be clear, the withholdings aren't
16  broken out anywhere.

17  MR. SALTZMAN: OK.

18  MR. ROBB: What we received are the principal, and
19  what the union provided us was an update on the interest.

20  MR. SALTZMAN: The interest. Yes.

21  MR. ROBB: We have the current interest amount.

22  MR. SALTZMAN: Right.

23  MR. ROBB: But we don't have the withholding data.

24  MR. SALTZMAN: Right.

25  In order to try to facilitate this process, I looked

1     into possibilities and learned that the Office of the Impartial
2     Chairperson has experienced this before, and there is a process
3     by which they have accepted in escrow the amounts due the
4     employees pursuant to arbitration awards.  They hold it in
5     escrow, the union finds the W-4s, gets the employees to come in
6     and fill out new W-4s, provides that to the Office of the
7     Impartial Chairperson.  The Office of the Impartial Chairperson
8     then runs a payroll by contracting with a payroll company and
9     then the money can be distributed with all the appropriate
10    withholdings for the employees.  One caveat, the Office of the
11    Impartial Chairperson does not want to wind up explaining to
12    IRS any kind of shortfalls.
13              THE COURT:  Of course.
14              MR. SALTZMAN:  In order to do this as a service to
15    both the employer and the employees, they insist that the
16    employer-side taxes be paid as well so those can be remitted to
17    the government immediately and that there be a payroll -- that
18    the cost of the payroll run should be borne by the employer.
19    It is his liability.  Those cases where there's a shortfall,
20    for some reason the numbers are estimated, if there is an
21    estimate and we're off, then they ask the employer to fill the
22    difference.  If there is an excess, it is returned to the
23    employer.
24              THE COURT:  Where are you in this process?  Is there
25    agreement?  Have you agreed to all of the steps that are going

```
 1   to be taken?
 2              MR. SALTZMAN:  I think we have agreed to most of the
 3   steps.  If Mr. Robb is agreeable in terms of how I have
 4   outlined them I think we have an agreement on how to proceed.
 5              THE COURT:  Is that your understanding, counsel?
 6              MR. ROBB:  Yes.  We are in agreement in principle.  It
 7   sounds as though the union has a little more familiarity with
 8   the process than I do individually, so I have requested
 9   Mr. Saltzman to just send me something in writing so we can
10   memorialize this.
11              THE COURT:  Fair enough.
12              Have you done that?
13              MR. SALTZMAN:  No.  Unfortunately we sort of reached
14   this agreement in principle late Friday.  I have two cases that
15   are returnable on motions in this Court this afternoon.
16              THE COURT:  I get it.  When are you going to do it?
17   Can you do it this afternoon?
18              MR. SALTZMAN:  Probably tomorrow.
19              THE COURT:  It doesn't sound very complicated.
20              MR. SALTZMAN:  I will try a letter, and if they sign
21   it that will be fine.  I do need to double check it with the
22   impartial chairperson's office.  They have a mind of their own.
23   They will not do it because I say so.
24              THE COURT:  Will they do it?
25              MR. SALTZMAN:  We have done it in the past.
```

1          THE COURT:  They don't know about this case?

2          MR. SALTZMAN:  No.

3          THE COURT:  The ADP option is out?

4          MR. SALTZMAN:  The ADP option, as I understood it, was

5     Mr. Robb's option.  If they are having problems with it, the

6     truth of the matter is we would much rather have the money for

7     the employees in escrow with an impartial arbitrator than with

8     this employer.

9          THE COURT:  OK.

10         MR. ROBB:  They have specifically told us no.  They

11    gave us a run-around for a while, it's hard, it's complicated.

12    But can you do it?  Finally the answer was no, we are not going

13    to do it.

14         THE COURT:  They are not going to do it.  I am sure

15    they can do it.

16         MR. ROBB:  That's right.  It's doable, but they refuse

17    to do it.

18         THE COURT:  This is a good mechanism, or good enough

19    it seems to me.

20         Why don't we do this.  Why don't you let me know as

21    soon as there is agreement on this letter and there is an

22    agreement in principle.  I don't imagine there is anything that

23    is going to be in this letter that is not going to be

24    agreeable.

25         MR. SALTZMAN:  The only issue that I understand keeps

1  us in principle and not completely closed, and if we can close
2  it right now that would be fine --
3      THE COURT: Yes.
4      MR. SALTZMAN: -- is that the impartial chairperson's
5  office as I understand it insists on the employer-side taxes to
6  be paid, and that the interest that's been awarded on the wages
7  is computed for tax purposes as wages. So that would be
8  reported to the IRS as wages, and the employer taxes would be
9  on it and the withholdings would be on it. That's the way they
10 do it --
11     THE COURT: I got it.
12     MR. ROBB: I have to take a look at that legal
13 question.
14     THE COURT: Yes. It is a legal question. It is an
15 employer obligation.
16     MR. ROBB: I am not disputing the obligation to pay
17 FICA. I question whether FICA is due upon interest on a
18 judgment. I just don't know the answer to that.
19     THE COURT: You will figure it out.
20     MR. ROBB: Yes.
21     THE COURT: You will figure it out. My guess is it
22 would be. I don't know, to be honest with you. It's just a
23 guess.
24     Here's what I would like to see. I would like to,
25 first of all, have you agree on a process. I don't think that

the legal fee checks, so to speak, should be cashed or the fund checks should be cashed unless and until I give you the OK, and I am not going to give you the OK until the money is distributed to the employees.

When do you think you will know -- I am going to have you back here, unless it's all finished by that time -- that this can all happen?

MR. SALTZMAN: I will contact the Office of the Impartial Chairperson when we get back to our offices. I will get Mr. Robb a letter before the end of the day that will be consistent with the office's, the impartial chairperson's practices; and if that's OK with Mr. Robb signed in, the money could be deposited I suppose the next day. There would be a lag in distribution to the employees while we get the W-4s and they come in and the money is cut.

THE COURT: How many employees are you talking about?

MR. SALTZMAN: Over 50.

THE COURT: Five zero?

MR. SALTZMAN: Over 50. 57, I believe.

THE COURT: You know where they all are?

MR. SALTZMAN: I don't personally. The business agent for the union has contacted I understand all of them, or at least reached out to all of them and as of now has W-4s for about two-thirds of them.

THE COURT: I am going to schedule another conference

1    next week, Tuesday at 11; 7/25 at 11.  You could let me know or
2    send me a copy of this letter agreement that you are proposing
3    to enter into as soon as it's signed, which could be today or
4    tomorrow it sounds like.  Again, no legal fee checks or funds
5    checks are to be cashed until authorized by the Court, and that
6    will happen when the employees get paid.  OK.  Thanks.
7              Nice to see you.
8              MR. ROBB:  Thank you, your Honor.
9              MR. SALTZMAN:  Thank you, your Honor.
10             (Adjourned)